GERALD DEVLIN *v.* GLORIA MADDOX WIENER ET AL.
(15010)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued January 11—decision released April 4, 1995

*John C. Heffernan,* with whom, on the brief, was *James M.S. Ullman,* for the appellant (named defendant).

*Robert T. Harrington,* for the appellee (plaintiff).

CALLAHAN, J. This appeal requires us to determine whether a mortgage deed and the underlying obligation that the deed purports to secure are sufficiently definite to sustain the plaintiff's foreclosure action. The trial court concluded that a debt is owed the plaintiff and that the debt is secured by a valid mortgage. We agree.

The record reveals the following facts.[1] The plaintiff, Gerald Devlin, owned a nine acre parcel of real estate in Branford, on which his residence was located. The defendants Pine Orchard Associates, Inc., and Pine Orchard Development Corporation (collectively, Pine Orchard),[2] sought to acquire and then subdivide the plaintiff's land. On February 18, 1984, the plaintiff executed a written contract to sell the nine acre parcel and his residence to Pine Orchard. The agreement entered into by the parties, although convoluted, essentially provided that the plaintiff would convey his interest in his Branford real estate to Pine Orchard for a cash pay-

---

[1] The relevant facts were presented to the trial court entirely through stipulations and exhibits.

[2] The defendants have conceded that Pine Orchard Associates, Inc., and Pine Orchard Development Corporation may be considered the same entity for the purposes of the transactions underlying this appeal.

ment of $86,000 and a promise by Pine Orchard either (1) to convey to the plaintiff a finished three bedroom condominium, cooperative apartment unit or single-family residence in the planned subdivision, or (2) to transfer to the plaintiff a building lot in the planned subdivision together with sufficient building materials for the plaintiff to erect a three bedroom single-family residence on the lot, or (3) to return to the plaintiff his Branford residence together with one half of one acre of land. The agreement further provided that, as security for Pine Orchard's additional promise, Pine Orchard would mortgage the transferred property back to the plaintiff. Finally, the agreement provided that the mortgage would secure a debt of Pine Orchard to the plaintiff in the amount of $84,000.[3] The $86,000 was paid to the plaintiff at the time of the closing and, as required by the agreement, was used to extinguish an existing first mortgage held by the Branford Savings Bank. No other consideration has been paid to the plaintiff.

On February 29, 1984, the plaintiff conveyed his interest in the Branford real estate to Pine Orchard Development Corporation and, on the same date, that defendant mortgaged the same real estate to the plaintiff in accordance with paragraph twenty-nine of the purchase and sale agreement.[4] Daniel J. Wiener executed the mortgage instrument in his capacity as president of the corporation. The mortgage deed expressly stated that it was given to secure the obligation of Pine Orchard to "transfer certain properties" to the plain-

---

[3] The document itself, which was fashioned by the parties without the aid of counsel, is several pages in length and contains various crossouts, insertions and initialed modifications. As aptly noted by the trial court, the agreement "graphically demonstrates the potential for disaster in documents prepared by laypersons without the assistance of lawyers."

[4] Paragraph twenty-nine of the purchase and sale agreement provided in relevant part that "[a]s security for Purchaser's obligations to Seller under Paragraph '28', above, Purchaser shall . . . grant to Seller a second mortgage . . . on the Premises in the amount of $84,000.00 . . . ."

tiff pursuant to "a contract dated February 18, 1984." Although the deed itself was silent as to the amount of the secured debt, paragraph twenty-nine of the purchase and sale agreement specifically indicated that the mortgage was to secure an obligation of the corporation in the amount of $84,000.

On July 8, 1985, Pine Orchard Development Corporation conveyed all of its interest in the Branford property to Pine Orchard Development Associates, a partnership in which Daniel J. Wiener was a general partner. Thereafter, Pine Orchard Development Associates transferred the property to Daniel J. Wiener and Gloria Maddox Wiener, jointly as husband and wife with a right of survivorship. On April 13, 1990, Daniel J. Wiener transferred his interest in the Branford property, by quitclaim deed for no consideration, to his wife, the named defendant, Gloria Maddox Wiener.

On January 31, 1992, the plaintiff filed suit against Pine Orchard Associates, Inc., Pine Orchard Development Corporation and Gloria Maddox Wiener for foreclosure of his mortgage, claiming that the defendants' obligation to the plaintiff, as set forth in the February 18, 1984 purchase and sale agreement and as secured by the mortgage deed given by Pine Orchard Development Corporation to the plaintiff on February 29, 1984, was in default. The named defendant filed an answer and various special defenses, including the defense that the "Mortgage Deed does not refer to a 'Mortgage Note' and fails to define any other obligation or debt in sufficient detail," and therefore does not secure an enforceable obligation.

After a hearing, the trial court concluded that "[a]s between the parties . . . there is an indebtedness due to the plaintiff on the mortgage in the amount of $84,000. While the defendants have cited deficiencies

in the document in question, the court notes that . . . the document is susceptible to 'a reasonable and precise interpretation.' . . . The court finds there is an underlying obligation due to the plaintiff in the amount of $84,000.00 and that this amount is secured by a valid mortgage." Thereafter, on motion by the plaintiff, the trial court ordered a foreclosure by sale and rendered judgment accordingly. The named defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the named defendant claims only that the trial court improperly concluded that the mortgage deed and the obligation purportedly secured by the mortgage deed were sufficiently definite to sustain the plaintiff's foreclosure action. At the outset, the named defendant challenges the trial court's finding that she was a party, or in privity with a party, to the mortgage transaction. She claims, therefore, that the trial court improperly applied the law governing the enforceability of mortgages between parties to the mortgage, instead of applying the law governing the enforceability of mortgages between mortgagees and nonparties. Moreover, the named defendant claims that the mortgage deed is invalid because it does not secure a note, but rather, the performance of affirmative acts by Pine Orchard under the February 18, 1984 purchase and sale agreement, and because the deed does not recite the specific amount of the debt allegedly owed. Finally, the named defendant contends that the obligation contained in paragraph twenty-eight of the purchase and sale agreement is insufficient because it is too indefinite as to time for performance, subject matter and method of performance. We conclude that the mortgage is sufficiently definite as to be enforceable against the named defendant even if she is properly viewed as a third

party,[5] and we therefore affirm the judgment of the trial court.

We begin by reviewing the well established common law governing the sufficiency of mortgage deeds as between a mortgagee and a nonparty to the mortgage. "In [*Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 578–79, 522 A.2d 763 (1987)], we stated that the dispositive question in examining the validity of a mortgage is whether it provides 'reasonable notice' to third parties of the obligation that is secured. . . . The purpose of such 'reasonable notice' is to prevent parties that are not privy to the transaction from being defrauded or misled. . . . A corollary of this proposition is that errors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties. . . . In other words, the recorded mortgage deed does not need to recite with particularity all of the details of the underlying transaction. . . .

"In *Dart & Bogue Co.* [v. *Slosberg*, supra, 202 Conn. 579], we defined 'reasonable notice' as notice of the nature and amount of the encumbrance which the mortgagor intends to place upon the land. . . . The 'nature' of a secured debt includes such fundamental characteristics as whether the debt is absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing liability or future advances. . . . The 'amount' of the debt is the dollar value of the obligation secured, to the extent that it can be ascertained at the time the mortgage is executed. If the debt cannot be definitively ascertained at that time, such data must be set out with respect to

[5] We therefore need not decide whether the trial court improperly found that the named defendant was a party, or in privity with a party, to the mortgage.

that debt as will put anyone interested in the inquiry upon a track leading to discovery. . . . Significantly, in *Dart & Bogue Co.* [v. *Slosberg,* supra, 580], we recognized that [t]he record is the starting point for inquiry, not . . . the starting and ending point. . . . In sum, if a party is able by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the encumbrance from information set out in the land records, then the mortgage is valid." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Esposito,* 210 Conn. 221, 227–28, 554 A.2d 735 (1989).

We initially note that we will not declare the mortgage deed invalid, as the named defendant urges us to do, simply because the deed itself lacks a statement of the specific amount of the debt secured. As in *Esposito,* the deed in the present case omits "documents that contain important details about the obligation but the existence of which documents [is] expressly referred to in the recorded mortgage deed. The mortgage deed does not affirmatively misidentify the characteristics of the obligation, thus leading a title searcher to believe that the obligation is something that it is not, nor does the omission of the documents leave a title searcher without any indication of the obligation's nature or without a reasonable direction to discover the terms of the mortgage." Id., 230. In fact, the mortgage deed expressly states that the obligation secured is set forth in the February 18, 1984 purchase and sale agreement between the plaintiff and Pine Orchard Associates, Inc., and further states that the agreement is on file at the office of the attorney for Pine Orchard. Thus, because the mortgage deed sufficiently puts a title searcher on notice of the location of the underlying agreement that contains the substance of the secured debt, the efficacy of the mortgage deed may be determined by analyzing the sufficiency of the underlying agreement.

Moreover, the mortgage deed is not invalid simply because it purports to secure a "performance" instead of a stated monetary obligation. "The condition of a mortgage may be the payment of a debt, the indemnity of a surety, or the doing or not doing any other act. *Cook* v. *Bartholomew*, 60 Conn. 24, 25, 22 A. 444 (1891); see *State* v. *Hurlburt*, 82 Conn. 232, 236, 72 A. 1079 (1909); *Jarvis* v. *Woodruff*, 22 Conn. 546, 550–51 (1853); *Gagan* v. *Leary*, 14 Conn. Sup. 468, 470 (1946); see also 9 G. Thompson, Real Property (Grimes 1958) § 4659, p. 32." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Esposito*, supra, 210 Conn. 225–26. Thus, if we determine that the underlying agreement contains a sufficiently definite obligation, whether that obligation be for the payment of a specific dollar amount or for the performance of some act, we may also determine that the mortgage deed is adequate to sustain the plaintiff's foreclosure action.

We now turn to the parties' February 18, 1984 purchase and sale agreement. Although the named defendant contends that the agreement is insufficient to support the mortgage deed at issue because the obligation contained in paragraph twenty-eight is too indefinite as to time for performance, subject matter and method of performance, the trial court, after viewing all of the evidence, concluded otherwise. On appeal, we are limited to determining whether this legal conclusion finds support in the record and is "legally and logically correct." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980); see also *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384–85, 650 A.2d 153 (1994).

The trial court concluded that paragraph twenty-eight of the parties' purchase and sale agreement creates an obligation due the plaintiff in the amount of $84,000. Our review of the various subsections to paragraph twenty-eight of the original agreement, which

was made a trial exhibit by the plaintiff, reveals that Pine Orchard agreed to compensate the plaintiff for the Branford property, in addition to the $86,000 payment made to extinguish the existing encumbrance, by one of three alternate methods. First, under paragraph twenty-eight (a) Pine Orchard could have chosen to return to the plaintiff his Branford residence together with one half of one acre of land. Second, under paragraph twenty-eight (a) (i), Pine Orchard could have chosen to transfer to the plaintiff a building lot together with sufficient building materials for the plaintiff to erect a three-bedroom single-family residence on the lot. Third, under paragraph twenty-eight (a) (ii), Pine Orchard could have chosen to convey to the plaintiff a finished three bedroom condominium, cooperative apartment unit or single-family residence in the subdivision that the defendants planned to construct on the Branford property. We further note that paragraph twenty-nine of the agreement provides that, as security for Pine Orchard's obligations to the plaintiff under paragraph twenty-eight, Pine Orchard granted the plaintiff a mortgage interest in the Branford property in the amount of $84,000.

Our review of the agreement between the plaintiff and Pine Orchard, which was part of the record before the trial court, persuades us to conclude that the trial court properly found that Pine Orchard Development Corporation had executed a mortgage securing a debt to the plaintiff in the amount of $84,000. Although the named defendant claims that the agreement is insufficient because it does not specify a time for performance, we note that both subsections (a) and (b) of paragraph twenty-eight of the agreement refer to a requirement that any conveyance to the plaintiff be made within two years from the date of closing. Likewise, although the named defendant contends that the method of performance and the subject matter constituting the substance

of the agreement are not sufficiently specified, the parties specifically agreed that each of the three options that Pine Orchard could have chosen to satisfy its obligation to the plaintiff had a value of $84,000. Thus, we conclude that the trial court's determination that there is an underlying obligation owed the plaintiff in the amount of $84,000, and that this amount is secured by a valid mortgage, is supported by the record and is "legally and logically correct." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, supra, 181 Conn. 221–22.

The judgment of the trial court is affirmed and the case is remanded to that court to set new law days and to order appropriate notice.

In this opinion the other justices concurred.