# RICHARD E. STEIN *v.* DONNA E. HILLEBRAND ET AL.
## (15538)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued December 3, 1996—officially released February 18, 1997

*Joy Kony Peshkin*, for the appellant (plaintiff).

*Matthew B. Woods*, for the appellee (named defendant).

PETERS, J. The principal issue in this appeal is the extent of the statutory authority of a trial court, in a dissolution of marriage action, to order the execution of a mortgage on real property as security for future alimony and child support payments. In an action for a declaratory judgment to quiet title against the named defendant, Donna E. Hillebrand,[1] the plaintiff, Richard E. Stein, sought judicial invalidation of a mortgage on a one-half interest in a parcel of real property that he and his brother, David Stein, had owned as tenants in common. The trial court rendered judgment in favor of the defendant. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The trial court, *Tobin, J.*, found the following facts, which are largely undisputed. In December, 1982, the defendant was granted a decree of dissolution of marriage from David Stein, her husband. As part of the dissolution award, the dissolution court, *Ryan, J.*, ordered David Stein to pay the defendant $1400 per

---

[1] David Stein was also named as a defendant. He was defaulted, however, for failure to appear and has not participated in this appeal. We will, therefore, refer to Hillebrand as the sole defendant in this case.

month as unallocated alimony and support until March, 1998, at which time these monetary obligations would be reviewed. Exercising the authority conferred by General Statutes §§ 46b-82 and 46b-84,[2] the dissolution court further ordered David Stein, as security for his obligations, to mortgage to the defendant his one-half interest in certain real property located in Westport that he then owned as a tenant in common with the plaintiff. The plaintiff was present as a courtroom observer on December 1, 1982, when Judge Ryan orally issued this order.[3] Judge Tobin expressly found: "[Judge Ryan], in open court, asked Richard [Stein] if he consented to the mortgage being placed on the Westport property and he responded affirmatively."[4]

In accordance with Judge Ryan's order, David Stein executed, in favor of the defendant, a mortgage deed that was promptly recorded in the Westport land records. The deed explicitly referenced the case num-

---

[2] General Statutes § 46b-82 provides in relevant part: "Alimony. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable . . . ."

At the time of Judge Ryan's dissolution decree, General Statutes (Rev. to 1981) § 46b-84 provided in relevant part: "Parents' obligation for maintenance of minor child. (a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance.

"(b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . ."

[3] The terms of the dissolution judgment were eventually incorporated into a written decision on February 15, 1983.

[4] The parties agree that the transcript of the dissolution proceeding no longer exists.

ber of the dissolution decree and the court where it could be located. The deed further authorized the defendant to foreclose on the mortgage in the event of a default in David Stein's alimony and support payments. In June, 1987, David Stein quitclaimed his one-half interest in the Westport property to the plaintiff for its fair market value.

The plaintiff subsequently filed the present action, seeking to invalidate the defendant's mortgage on two principal grounds. He alleged that the dissolution court had no authority to order the execution of any mortgage because the postjudgment procedure statutes; General Statutes, c. 906; do not authorize the use of a mortgage to secure future alimony and support payments. In the alternative, he also argued that the particular mortgage ordered by the dissolution court in this case was unenforceable because its terms are too indefinite. The trial court, *Tobin, J.*, rejected both claims. It concluded that the postjudgment remedies statutes do not govern court-ordered security for alimony and support, and it construed existing case law to validate a mortgage deed, such as the one here at issue, that affords a title searcher adequate information to discover the terms of the underlying obligation. See *Connecticut National Bank* v. *Esposito*, 210 Conn. 221, 228, 554 A.2d 735 (1989). Accordingly, the trial court rendered judgment for the defendant.

On appeal, the plaintiff has elaborated on the arguments presented at trial. He first claims that the defendant's mortgage was invalid, ab initio, because: (1) § 46b-82 does not authorize a dissolution court to secure future alimony payments through the use of a mortgage; or, alternatively, (2) the postjudgment lien statutes preclude the exercise of any such authority under § 46b-82. He also claims that, even if the dissolution court had the authority to order the execution of a mortgage, the terms of the mortgage in this case are too uncertain

to be enforceable, because the mortgage does not state either the amount of the indebtedness or the final due date thereof. Finally, he claims that the trial court improperly found that he had consented to the encumbrance of the Westport property. We are unpersuaded by these arguments and, accordingly, affirm the judgment of the trial court.

## I

We begin our review of the plaintiff's claims by considering his two attacks on the authority of a dissolution court to order one former spouse to execute a mortgage to secure an alimony and support obligation to the other former spouse. These jurisdictional challenges put into question the extent to which § 46b-82 authorizes an order for such security and the extent to which chapter 906 precludes such an order. We read these statutes to support the action of the dissolution court in this case.

## A

The plaintiff's first argument is that § 46b-82 does not authorize a dissolution court to order a real property mortgage as security for future alimony payments.[5] As a matter of statutory construction, the plaintiff advances the view that the legislature did not intend to permit dissolution judgments "to facilitate a lifetime encumbrance on real estate." We disagree with this restrictive interpretation of § 46b-82.

In accordance with established principles of statutory construction, our paramount objective is "to ascertain

[5] The plaintiff does not challenge the trial court's authority, pursuant to § 46b-84, to order one party to a dissolution action to mortgage real property as security for *child support obligations*. We conclude, moreover, that provisions of § 46b-84 in effect at the time of Judge Ryan's dissolution decree empowered a trial court to make such an order. This conclusion is buttressed by the legislature's enactment, in 1989, of § 46b-84 (e) (now subsection [f]), which explicitly authorizes a trial court to order an obligor to secure child support payments by "execut[ing] a bond or post[ing] other security sufficient to perform such order for support . . . ."

and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340 (1993). If the words of a statute are unambiguous, we assume that they express the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). In the event of textual ambiguity, we discern such intent by also looking to legislative history, legislative policy and the relationship of the statute at issue to existing legislation. See *State* v. *McVeigh*, 224 Conn. 593, 607, 620 A.2d 133 (1993).

Section 46b-82 provides that "the superior court may order either of the parties [to a marriage dissolution action] to pay alimony to the other . . . . The order may direct that security be given therefor on such terms as the court may deem desirable . . . ." This statute was enacted in 1973 as part of a comprehensive modernization of divorce laws in this state.[6] Public Acts 1973, No. 73-373; see 16 H.R. Proc., Pt. 5, 1973 Sess., pp. 1929–30, remarks of Representative John N. DeMerell. The predecessor to § 46b-82 did not contain a similar security provision. See General Statutes (1958 Rev.) § 46-21.

In our view, the plain language of § 46b-82 evinces the legislature's intent to include real property within the scope of property interests that may serve as security for the payment of alimony. Nothing in the text of the statute supports a more limited definition of the word "security." Had the legislature meant this term to exclude real property, it easily could have so provided. We will not impute to the legislature an intent to limit this term where such intent does not otherwise appear in the language of the statute. *Home Ins. Co.* v. *Aetna*

---

[6] This section was originally enacted as General Statutes § 46-52 and was subsequently transferred to § 46b-82.

*Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995); see also *Dos Santos* v. *F.D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995) (reviewing courts are confined to language actually used in statute). Moreover, the statutory language authorizing security "on such terms as the court may deem desirable" underlines the legislature's intent to confer "broad judicial discretion" on a dissolution court to frame a remedial order that takes account of all the resources available to the parties. *Holley* v. *Holley*, 194 Conn. 25, 34, 478 A.2d 1000 (1984) (recognizing broad judicial discretion under § 46b-82). This statutory language is, on its face, inconsistent with a legislative intent to limit the forms of property to which a court may look as security for the obligations it imposes.

If we were to venture beyond the words of the statute, *nothing* in the history of the divorce reform legislation indicates that the legislature intended a more limited reading of the security provisions in § 46b-82. "Although we have on occasion relied in part on legislative history to narrow what might otherwise be regarded as broad statutory language . . . the legislative history is not compelling enough to persuade us to do so in the present case." (Citation omitted.) *Stratford* v. *State Board of Mediation & Arbitration*, 239 Conn. 32, 42–43, 681 A.2d 281 (1996). In fact, the legislative history reveals that these provisions were adopted in response to concerns that former spouses were frequently avoiding their alimony and support obligations. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1973 Sess., pp. 233–37, remarks of Barbara Lifton. To interpret the security language in § 46b-82 to exclude real property would, therefore, defeat the remedial purpose of this legislation by removing a stationary, valuable, and ascertainable form of property from the class of available security. This we decline to do.

We conclude, accordingly, that the dissolution court had the authority under § 46b-82 to order David Stein to execute a real property mortgage in favor of the defendant as security for his alimony obligations. See *Devlin* v. *Wiener*, 232 Conn. 550, 557, 656 A.2d 664 (1995) (mortgage can secure performance as well as payment on debt).

B

The plaintiff next claims that the trial court's authority to order a mortgage as security for family obligations is limited by the statutes pertaining to postjudgment procedures. See General Statutes c. 906, §§ 52-350a through 52-400f. He claims that the determination of an arrearage of alimony and support "can only occur postjudgment" and he infers therefrom that collection of an arrearage must be governed by the postjudgment procedures specified in chapter 906. Chapter 906 permits the execution and foreclosure of a lien against a judgment debtor's property only in the event a judgment creditor obtains an unsatisfied "money judgment." See General Statutes § 52-350a (15). Section 52-350a (13), which defines "money judgment," excludes from this definition a "family support judgment." Section 52-350a (7), in turn, defines "family support judgment" to include "a judgment, order or decree of the superior court for payment of a legal obligation for support or alimony to a spouse . . . ." The plaintiff contends that, because these statutes do not allow a party to obtain a postjudgment lien to secure alimony or support payments, the dissolution court violated chapter 906 by ordering David Stein to mortgage his property to secure these payments. We are unpersuaded.

In construing these statutes, in addition to the principles referred to above; see part I A; *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 390–91; we rely on the proposition that "[t]he legislature is pre-

sumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 554, 546 A.2d 226 (1988). "Where, as here, more than one statute is involved, we [also] presume that the legislature intended them to be read together to create a harmonious body of law . . . ." *Berger* v. *Tonken*, 192 Conn. 581, 589, 473 A.2d 782 (1984).

The plaintiff's argument mistakenly assumes that the defendant's rights under her mortgage are governed by the postjudgment procedure statutes. Section 52-350a (15) specifies, in relevant part, that a "postjudgment procedure" involves "a placing of a *lien* on property [or] a modification or discharge of a *lien* . . . ." (Emphasis added.) Neither that section nor any other section in chapter 906 indicates that the postjudgment procedures serve to limit the creation or the enforcement of a prejudgment mortgage. Chapter 906, therefore, does not address a dissolution court's authority to order a *mortgage* to secure alimony and support obligations or a trial court's authority to conduct a *mortgage* foreclosure proceeding in satisfaction of those obligations. We presume that the legislature uses the terms "mortgage" and "lien" to connote their different legal meanings.[7]

---

[7] Although these terms are frequently conflated, the distinction between a mortgage and a judgment lien is more than semantic. A mortgage is a form of contract and, under Connecticut law, immediately vests legal title in the mortgagee and equitable title in the mortgagor. See *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 569, 620 A.2d 118 (1993). Foreclosure on a mortgage, moreover, is an equitable action that "precludes further proceedings on the underlying debt" and requires an unsatisfied mortgagee to pursue his rights through a deficiency judgment. *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 649, 600 A.2d 1 (1991). A judgment lien, on the other hand, results from the unilateral act of a creditor and does not vest him with legal title to the subject property. Cf. *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 230 Conn. 807, 821, 646 A.2d 812 (1994). Foreclosure of a judgment lien is an action at law that does not extinguish the underlying debt. See *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 649.

See, e.g., General Statutes c. 846 (mortgages) and General Statutes c. 847 (liens).

Chapter 906, moreover, applies only in the context of *postjudgment* procedures. In contrast, the order directing David Stein to mortgage his property as security for future obligations occurred *prior* to any judgment of amounts owing. The plaintiff claims that, for the defendant to "levy" on the Westport property, the trial court will eventually have to reduce the amount of any arrearage to a "money judgment," which would then bring "this matter squarely within the ambit" of the exclusions in chapter 906. Again, the plaintiff fails to recognize that, in the event David Stein fails to satisfy his obligations, the defendant, as the mortgagee of the Westport property, would not have to obtain a "money judgment" but could instead immediately institute *foreclosure proceedings* on the property. These foreclosure proceedings would not take place "postjudgment" as that term is used in chapter 906.

We conclude, accordingly, that the provisions of chapter 906 relating to postjudgment procedures are not applicable to this case and, therefore, did not serve to limit the authority of the dissolution court to order David Stein to mortgage the Westport property as security for alimony and support obligations.

II

The plaintiff's second claim is that, even if the mortgage was valid as between David Stein and the defendant, it is not valid as to a third party purchaser of the mortgaged property like himself. He contends, as a matter of law, that the terms of the mortgage deed are too indefinite to be enforceable. He further contends, as a matter of fact, that the trial court improperly found that he had consented to be bound by the mortgage. We disagree with both contentions.

## A

In his argument regarding the impermissible vagueness of the mortgage deed executed by David Stein, the plaintiff reminds us that the underlying debt secured by the mortgage ultimately depends upon both David Stein's ability to meet his alimony and support obligations and the trial court's future willingness or unwillingness to modify those obligations. In light of these uncertainties, he contends that no degree of "[p]rudence and diligence" would have enabled him to determine the maximum amount or maximum duration of the underlying debt. Such a mortgage, he claims, must be invalid. We are unpersuaded. We conclude that the plaintiff, having knowingly acquiesced to the terms of the mortgage, is not merely a third party to that mortgage. As a result, he is bound by its terms, regardless of their alleged vagueness.

Under our common law, a valid mortgage deed must provide " 'reasonable notice' to *third parties* of the obligation that is secured." (Emphasis added.) *Connecticut National Bank* v. *Esposito*, supra, 210 Conn. 227. We have defined "reasonable notice" as "notice of the nature and amount of the encumbrance which the mortgagor intends to place upon the land." (Internal quotation marks omitted.) *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 579, 522 A.2d 763 (1987). "The purpose of such 'reasonable notice' is to prevent parties *that are not privy to the transaction* from being defrauded or misled." (Emphasis added.) *Connecticut National Bank* v. *Esposito*, supra, 227.

The plaintiff contends that the mortgage deed in this case could never provide a third party with reasonable notice of the debt obligation because that obligation, as referenced in the mortgage deed, remains uncertain until a court reduces David Stein's arrearages to a fixed sum. This argument is unavailing to the plaintiff because

he is not a stranger to the mortgage. The trial court, *Tobin, J.*, found that the plaintiff was present in court on the day Judge Ryan orally rendered his dissolution decree and that Judge Ryan explicitly asked the plaintiff whether he consented to the use of a mortgage to secure David Stein's alimony and support obligations. At this point, the plaintiff could have objected to the mortgage or to the perceived indefiniteness of the underlying debt. He did not. It would be speculative to assume that, without the plaintiff's consent, Judge Ryan would have ordered David Stein to mortgage the Westport property that the two brothers owned as tenants in common. A person who participates in the structuring of a mortgage, ab initio, is not an innocent third party and is not entitled to the protection of the reasonable notice requirements. See *Burt's Spirit Shop, Inc.* v. *Ridgway*, 215 Conn. 355, 366, 576 A.2d 1267 (1990); *Connecticut National Bank* v. *Esposito*, supra, 210 Conn. 227.

It follows from this conclusion that the plaintiff is bound by the terms of the mortgage, regardless of their potential uncertainties. As a form of contractual arrangement, a mortgage may secure indefinite obligations that, although potentially invalid as to third party encumbrancers without notice, are nevertheless valid as to the original parties. See *Devlin* v. *Wiener*, supra, 232 Conn. 557 (mortgage can secure performance obligations between original parties); see also *Augeri* v. *C. F. Wooding Co.*, 173 Conn. 426, 430, 378 A.2d 538 (1977) (courts reluctant to reject contract for uncertainty). Those who are intimately connected with the negotiation and execution of a mortgage risk being assimilated to the rights and obligations of the original encumbrancer. This is one such instance. Just as David Stein could not challenge the validity of the mortgage as it applied to him, so too the plaintiff cannot now attack

the mortgage on the basis of terms to which he, himself, agreed.

Our holding in this case is necessarily limited to circumstances in which a purchaser of mortgaged property participates, in some critical way, in the original mortgage transaction. Accordingly, we express no opinion on whether the defendant's mortgage would have been valid as to an innocent third party.[8]

B

Finally, we address the plaintiff's claim that the trial court made an erroneous finding of fact with respect to his participation in the dissolution proceedings on December 1, 1982. The plaintiff does not deny that he was in the courtroom on that day, or that Judge Ryan inquired whether he would consent to the mortgage. He argues, instead, that his consent was not knowingly given because he did not understand the implications of the question that he answered and was not afforded the opportunity to consult counsel.

It is axiomatic that a trial court's factual findings are reviewed only for clear error. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 301, 685 A.2d 305 (1996). The plaintiff, as the appellant, has the responsibility to

---

[8] In the future, a dissolution court considering an order for the execution of a mortgage to secure family obligations may be well advised to include provisions to ensure that the mortgage deed specifies (or references other documents that specify), to the extent possible, the maximum potential amount of alimony or support arrearage and the maximum possible duration of the alimony or support obligations. In this way, a subsequent title searcher can become fully apprised of the extent to which mortgaged property is encumbered.

assist us in this review by ensuring that the rationale underlying the trial court's findings adequately appears in the appellate record.[9] See *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, 190 Conn. 707, 714, 462 A.2d 1037 (1983); see also Practice Book § 4051 (appellant may seek articulation from trial court).

The trial court, *Tobin, J.*, acknowledged that the plaintiff claimed that he had been "totally unaware of the circumstances and effect of the mortgage." Nonetheless, the court found that the plaintiff had consented to the granting of the mortgage and that he had taken the quitclaim deed from his brother "knowing full well the terms of the mortgage." The plaintiff did not ask the trial court to articulate further the basis on which the court made this finding. See Practice Book § 4051. On this state of the record, we cannot conclude that the trial court's finding was clearly erroneous.[10] See *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, supra, 190 Conn. 714.

The judgment is affirmed.

In this opinion the other justices concurred.

[9] The fact that the transcript of the original divorce proceedings no longer exists; see footnote 4; does not relieve the plaintiff of this responsibility.

[10] The plaintiff claims that the two month lapse between Judge Ryan's oral announcement of the dissolution decree and the subsequent issuance of his memorandum of decision suggests that he never actually delivered the exact terms of this decree orally. Yet, the plaintiff never presented this argument in his trial court brief and never requested an articulation from the trial court on this issue. Accordingly, we decline to address it now. See Practice Book § 4061.