[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On or about June 2, 1998, the plaintiff[1] filed a complaint seeking a judgment of strict foreclosure on property at 12 Old Sharon Road in Sharon, Connecticut. By note dated April 11, 1997, the defendants Killackey[2] promised to pay $325,000 with interest to the original named plaintiff. Before this court is plaintiff's amended motion for summary judgment as to these defendants and as to liability only. Because this case has a convoluted history and because the parties have filed a plethora of briefs attached to which are documents in multiples often, a chronology of events is necessary. CT Page 8704
Thomas M. Killackey and Claudia M. Killackey (defendants) filed for bankruptcy on March 7, 1995, under Chapter 11 of the United States Bankruptcy Code. The case was later converted to a Chapter 7 case by the bankruptcy court and a discharge was ordered on April 4, 1996. The trustee of the defendants' bankruptcy estate brought an adversary proceeding by complaint dated March 26, 1996, to recover the property located at 12 Old Sharon Road #2, Sharon, Connecticut. At some prior time, the property had been transferred to the Maiden Stone Trust, an entity it is claimed was controlled by the defendants. A notice of lis pendens was recorded in the Sharon land records on July 7, 1997. Sometime after that adversary proceeding had commenced, the property was transferred back to the defendants in their individual names. The adversary proceeding was dismissed on July 21, 1998, and a release of the lis pendens was subsequently filed by the trustee.
Both the mortgage note and deed were dated April 11, 1997. Beginning January 1, 1998, and to the present, the defendants have failed to pay the monthly installments of principal and interest. The plaintiff therefore exercised its option to declare the entire balance due and payable. It filed a notice of lis pendens on the land records of the town of Sharon on May 26, 1998. The plaintiff then filed a complaint on June 8, 1998, claiming: (1) foreclosure of the mortgage; (2) immediate possession of the property; (3) a deficiency judgment against the defendants; (4) a strict foreclosure of the mortgage; (5) costs of collection including reasonable attorney's fees; (6) costs of suit; (7) damages; (8) interest; (9) that a receivership should be appointed to collect the rents and profits accruing from the property; and (10) other and further relief as the court deems just and proper.
On October 16, 1998, each defendant filed an answer; neither asserted a special defense then or at any time thereafter.
The plaintiff first filed a motion for summary judgment on November 27, 1998. The court (Frazzini, J.) denied the motion without prejudice on November 1, 1999, allowing for refiling of the motion once revised requests for admissions were filed. The plaintiff filed revised requests for admissions on November 4, 1999, and the defendants filed their responses on December 3, 1999. In their first filed responses, on December 3, 1999,[3] the defendants admitted their execution of a mortgage to Pinnfund vis-a-vis this property, admitted they received $325,000 in exchange for that mortgage, admitted no payments were made by them beginning January 1, 1998, and admitted they were in default on their loan payments. They denied the property was encumbered by two other mortgages. They also denied Request for Admission #2 which read, "By deed dated April 11, 1997, defendants Killackey, to secure the note, mortgaged CT Page 8705 to Pinnfund, USA, property known as 12 Old Sharon Road #2, Sharon, Connecticut, of which the defendants Killackey were then the record owners." Though the defendants denied the entirety of that assertion, it is clear from their later filings that which they intended to deny was that portion which read "of which the defendants Killackey were then the record owners." They thus admitted to execution of the documents, receipt of the loan proceeds, an obligation to re-pay, and the failure to re-pay.
The plaintiff's amended motion for summary judgment dated January 18, 2000, is based primarily upon these stated admissions by the defendants. As exhibits to its motion, the plaintiff attached a copy of the note and mortgage deed, the responses to the requests for admission, and the affidavit of one Ronald Maleri, the owner of a title service company. Mr. Maleri there stated he had searched the Sharon land records and reviewed recorded deeds and that his opinion was that the Killackeys were the record owners of the property on April 11, 1997. The plaintiff also attached a memorandum of law which, addressing the defendants' denial they were the record owners on April 11, 1997, asserted that, under § 549(a) of the Bankruptcy Code, the lien is merely voidable — not void — within two years of its attachment and that the trustee had never attempted to have the mortgage declared void.
The defendants filed an objection to the plaintiff's motion on February 4, 2000, and attached a memorandum of law and numerous documents. The gist of the defendants' objection was — interestingly — that the property was not part of their bankruptcy estate in April of 1997 and that the adversary proceeding prevented both them and the chapter 7 trustee from legally offering or granting permission to offer the property as security for the loan by the plaintiff. On February 17, 2000, they filed a second memorandum of law essentially alleging the plaintiff's claim was unsecured and thus was discharged by the bankruptcy court when it discharged these defendants from their chapter 7 bankruptcy proceeding on July 22, 1998.[4] The plaintiff's succinct response was that unsecured debts were not before this court.
On April 28, 2000, the plaintiff filed a supplemental memorandum and asserted the defendants' amended response to the plaintiff's requests for admission that they did not receive $325,000 in loan proceeds was irrelevant to this foreclosure action because Bankers Trust, as the substituted plaintiff, was a holder in due course. The defendants' amended response is without legal effect since no court has acted to permit the withdrawal of the earlier filed admission and/or the amended response.[5] The defendants objected to the plaintiff's memo alleging the originally named plaintiff (Pinnfund) and the substituted plaintiff (Banker's Trust) fraudulently and negligently conspired to benefit from CT Page 8706 the actions of their settlement agent who either failed to or delayed distribution of $277,000 to another lender not here a party. That claim is not relevant to this foreclosure action or this summary judgment motion. Additional memoranda have been filed by the parties but they address issues raised by the defendants' alleged counterclaim of February 4, 2000. Assuming for the purpose of this ruling only that a counterclaim is there properly stated, it too is irrelevant to the issue before this court for reasons here to be discussed.
Both parties appeared at oral argument on April 3, 2000. The sole issue is whether, under the circumstances presented this court, the plaintiff should be granted summary judgment as to liability in this foreclosure action.
Summary judgment is appropriate when the pleadings, affidavits, and other proof submitted show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.Alvarez v. New Haven Register, Inc., 249 Conn. 709, 714 (1999). The moving party has the burden of establishing the nonexistence of any material fact. Water and Way Properties v. Colt's Mfg. Co., 230 Conn. 660,664 (1994). A material fact is one that makes a difference in the case result. Harvey v. Boehringer Ingelheim Corp., 52 Conn. App. 1, 4 (1999). The trial court must view the evidence in the light most favorable to the non-moving party. Scrapchansky v. Plainfield, 226 Conn. 446, 450 (1993). A party opposing summary judgment must substantiate its adverse claim by showing there is a genuine issue of fact together with the evidence disclosing the existence of that issue. Practice Book Sections 17-45, 17-46; Connell v. Colwell, 214 Conn. 242, 246 (1990). The trial court does not sit as a trier of fact when ruling on a motion for summary judgment. . . . The trial court's function is not to decide issues of material fact but rather to determine whether any such issue exists.Harvey, supra, at 5; Fleet Bank, N.A. v. Galluzzo, 33 Conn. App. 662, 666
(1994), cert. denied, 229 Conn. 910 (1994).
The common law defenses to a mortgage foreclosure action are payment, discharge, release, satisfaction, and invalidity of the lien. SeePetterson v. Weinstock, 106 Conn. 436, 441 (1927); see also SouthbridgeAssociates, L.L.C. v. Garofalo, 53 Conn. App. 11, 15 cert. denied,249 Conn. 919 (1999). Defendants have filed no special defenses in this action. As above stated, the defendants, on February 4, 2000 — more than 2 weeks after the plaintiff's Amended Motion For Summary Judgment was filed — filed a "Motion For Leave To File A Counterclaim." That motion, which, for reasons unknown to this court, has never been responded to by the plaintiff, has not been acted upon by a court. Further, it does not assert a proper "counterclaim" not merely because no special defenses had previously been asserted but also because the alleged CT Page 8707 "counterclaim" consists of the "February 4, 2000 Affidavit of Defendant Thomas M. Killackey and related Exhibits." The affidavit includes a potpourri of allegations — virtually all of which assert the fraudulent and/or negligent actions of the original plaintiff's (Pinnfund's) agent (Attorney Morris Olmer) in his performance of Title Services, his falsification of a HUD settlement statement, his falsely inducing the defendant(s) to accept the 1997 loan made by Pinnfund by promising future legal services, his allowing of "illusory" liens to be placed on the property and thereby preventing the defendants from later selling or refinancing the property, etc. The "related Exhibits" consist largely of documents relating to the bankruptcy discharge of 4/4/96, excerpted portions of the Bankruptcy Adversary Proceeding, a portion of the Preliminary Certificate of Title to the property, and Pinnfund's 4/11/97 Hud Settlement Statement. Killackey there averred that, "if and when the court grants my February 4, 2000 `Motion for Leave to File a Counterclaim,'" he would use the "various discrepancies" in those specifically delineated documents to prove his claims against Pinnfund by virtue of the claimed acts of "its authorized agent, Morris Olmer." The "counterclaim" does not allege causes of action. At best, it contains allegations which, if proven, attack the validity of the note and mortgage.
"A [mortgage deed]. . . . when duly executed, has the force and effect of a deed to the mortgagee in fee simple, subject to defeasance, with mortgage convenants. . . ." General Statutes § 47-36h. "A mortgage is a form of contract and, under Connecticut law, immediately vests legal title in the mortgagee and equitable title in the mortgagor." Stein v.Hillebrand, 240 Conn. 35, 43 n. 7 (1997). A mortgagor cannot effectively convey an interest in property that he does not have. See 1 Restatement, Property § 11 (1936).
Defendants' argument is that the Bankruptcy Adversary Proceeding — commenced to recover the property from the Maiden Stone Trust (to which the defendants had transferred the property) so that it could be included in the bankruptcy estate — prevented them from legally offering and the bankruptcy trustee from granting permission to offer the property as security for the plaintiff's loan. No authority or evidence is offered in support of this proposition. No information is provided with regard to the nature of the transfer by defendants to the Maiden Stone Trust; nor do we know the precise relationship between Killackey and the Maiden Stone Trust. The relevant question is whether it was in the defendants' estate when the note and mortgage were executed on 4/11/97. The defendants offer no evidence that, on that date, the title to the property was in the name of Maiden Stone Trust. Further, the defendants' claim they were precluded from encumbering the property is based upon their voluntary transfer of title to the Maiden Stone Trust and not by CT Page 8708 any action by Pinnfund or, as alleged, by Olmer, its agent. Relevant to this argument is Killackey's own description of the debt owed the original plaintiff (now owed to Bankers Trust) as a "valid (albeit unsecured) debt."
Paragraph 13 of Thomas Killackey's affidavit of February 4, 2000. If the pendency of the Bankruptcy Adversary Proceeding did not render the note and mortgage invalid, then the pendency of that proceeding cannot defeat this motion for summary judgment. "[T]he party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." (Internal quotations marks omitted.)Doty v. Mucci, 238 Conn. 800, 808 (1996). "It is not enough . . . for the opposing party merely to assert the existence of . . . a disputed issue."Id.; see also Burns v. Hartford Hospital, 192 Conn. 451, 457 (1984) (plaintiff's sworn deposition later contradicted by affidavit not sufficient to raise question of fact). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) (Pion v. SouthernNew England Telephone, 44 Conn. App. 657, 663 (1997). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof" (Internal quotation marks omitted). 2830 WhitneyAvenue Corp. v. Heritage Canal Development Associates, Inc.,33 Conn. App. 563, 569 (1994).
Alternatively, defendants argue the debt owed the plaintiff was discharged in bankruptcy. They posit the debt was unsecured.[6] While unsecured debts may be discharged in bankruptcy, debts incurred after the filing of a bankruptcy petition are not included in the debtor's discharge. 11 U.S.C. § 727 (b) provides for a discharge of the debtor "from all debts that arose before the date of the order for relief" In the case before the court, the defendants filed for bankruptcy under Chapter 11 on March 7, 1995. The case was converted to a Chapter 7 (liquidation) case by the bankruptcy court on or about June 16, 1995. The order for relief was entered under that chapter. The mortgage and note on the subject property was not executed until April 11, 1997. The critical date for determining what debts will be discharged in bankruptcy is the date of filing. Debts incurred after that date — although they may appear on a list of creditors — are not discharged. In re Hicks,144 B.R. 419, 420 (Bankr. E.D. Ark. 1992). Thus, postpetition debts are not discharged and defendants' argument this debt was discharged and that the plaintiff is therefore enjoined from instituting or continuing this action under the 4/4/96 bankruptcy court order is without merit. "A majority of cases have held that the bankruptcy code and its legislative history plainly establish that valid liens that have not been disallowed CT Page 8709 or avoided survive the bankruptcy discharge of the underlying debt." (Internal quotation marks omitted.) The defendants offer no evidence this lien — which they have described as "valid" and which the plaintiff asserts is voidable — has been disallowed or declared void by any court. Shawmut Bank v. Brooks Development Corp., 46 Conn. App. 399, 410
(1997).
The defendants have failed to plead — or to establish there exists — any defense to this mortgage action. They have failed in their obligation to offer evidence to dispute the material allegations of the plaintiff — specifically, title to the property vested in the defendants on April 11, 1997, the note and mortgage were duly executed and constituted a valid lien, and the defendants are in default of the loan.
The motion for summary judgment is granted.
SHEEDY, J.