08-5269-cv(L), 09-2377-cv(CON), 09-3186-cv(CON)
*Retained Realty, Inc. v. Kate McCabe et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the federal appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5ᵗʰ day of May, two thousand ten.

PRESENT:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges.*
> TIMOTHY C. STANCEU,
> > *Judge.*[*]

---

RETAINED REALTY, INC.,
> *Plaintiff-Appellant*,

  -v.-                           Nos. 08-5269-cv(L), 09-2377-cv(CON),
                                        09-3186-cv(CON)

KATE McCABE, ESTATE OF JACK J. SPITZER, STATE OF CONNECTICUT, WACHOVIA BANK, NATIONAL ASSOCIATION, JACK J. SPITZER, CHARLOTTE B. SPITZER, ROBERT SPITZER, JIL SPITZER-FOX, STEVEN VASS,
> *Defendants-Appellees.*

---

> CRAIG S. HILLIARD, Stark & Stark P.C., Lawrenceville, NJ (Robert A. Ziegler, Plainville, CT, *of counsel*), *for* Plaintiff-Appellant.

---

[*]The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

1

JAMES J. TANCREDI (David M. Bernard, *on the brief*) Day Pitney, LLP, Hartford, CT, *for* Defendants-Appellees Estate of Jack J. Spitzer, Charlotte B. Spitzer, Robert Spitzer, and Jil Spitzer-Fox.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED.

Plaintiff-Appellant Retained Realty, Inc. ("Plaintiff") appeals from an order of the United States District Court for the District of Connecticut (Hall, *J.*), entered September 30, 2008, denying its motion to amend a court ruling granting partial summary judgment to Defendants-Appellees Estate of Jack J. Spitzer, Charlotte B. Spitzer, Jil Spitzer-Fox, and Robert B. Spitzer ("Defendants" or "the Estate"). Plaintiff argues that it is entitled to a deficiency judgment against the Estate following a Connecticut foreclosure proceeding and that it is not responsible for Defendants' attorneys' fees. We assume the parties' familiarity with the underlying facts, procedural history, and specification of the issues on appeal.

We review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in its favor. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

Under Connecticut law, foreclosure on a mortgage is "an equitable action that 'precludes further proceedings on the underlying debt' and requires an unsatisfied mortgagee to pursue his rights through a deficiency judgment." *Stein v. Hillebrand*, 688 A.2d 1317, 1322 n.7 (Conn. 1997) (quoting *Fairfield Plumbing & Heating Supply Corp.*

2

*v. Kosa*, 600 A.2d 1, 3 (Conn. 1991)). Strict foreclosure, in contrast to the more traditional foreclosure by sale, "vest[s] title to the real property absolutely in the mortgagee . . . without any sale of the property. A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." *Ocwen Fed. Bank, FSB v. Charles*, 898 A.2d 197, 204 (Conn. App. Ct. 2006) (emphasis omitted). The opening of judgments of strict foreclosure is governed by Connecticut General Statute § 49-15, which provides in part as follows:

> Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, . . . provided no such judgment shall be opened after the title has become absolute in any encumbrancer . . . .

Conn. Gen. Stat. § 49-15(a)(1). Pursuant to § 49-14 of the Connecticut General Statutes, a party to a strict foreclosure who believes the value of the foreclosed-upon property will prove inadequate to satisfy the debt owed to it may thereafter file a motion seeking a deficiency judgment:

> [An evidentiary] hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim.

Conn. Gen. Stat. § 49-14(a). In a deficiency judgment hearing, "the court, after hearing the party's appraisers, determines the value of the property and calculates any deficiency. This deficiency judgment procedure presumes the amount of the debt as established by the foreclosure judgment and merely provides for a hearing on the value of the property." *First Bank v. Simpson*, 507 A.2d 997, 999 (Conn. 1986).

While the Plaintiff's motion for a deficiency judgment was pending, the district court revisited its earlier ruling in the context of a strict foreclosure proceeding and determined that it had erred in concluding that a deficiency judgment could be entered against the Estate despite the Plaintiff's failure to comply with a Washington State nonclaim statute requiring an estate's creditors to file a notice of claim within a specified period of time. *See* Wash. Rev. Code. § 11.40.051. Plaintiff argues that the district court improperly applied Federal Rule of Civil Procedure 54(b) to reopen the judgment of strict foreclosure because the judgment could not be reopened under Connecticut law, Plaintiff's title to the mortgaged property having already become absolute. For the following reasons, we disagree.

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Although it is often difficult to draw the line between substance and procedure for this purpose, it is "usually unproblematic" to do so for issues encompassed by the Federal Rules of Civil Procedure: "[i]t is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Id.* at 427 n.7; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010).[1] We

---

[1] The Supreme Court's recent decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), does not set forth a single test for whether a Federal Rule is procedural and thus consonant with the Rules Enabling Act. In a portion of the opinion joined by a plurality of the Court, it is stated that if the rule "governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* at 1442 (plurality opinion) (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)) (alteration in original). Justice Stevens's concurrence provides an exception for situations "in which the rule would displace a state law that is procedural in the ordinary use of the term but it so intertwined with a state right or remedy that it functions

4

must therefore determine whether the Federal Rule and the state law "attempt[] to answer the same question." *Shady Grove*, 130 S. Ct. at 1437; *see also Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (requiring an analysis of whether the Federal Rule's "scope . . . is 'sufficiently broad' to cause a 'direct collision' with the state law, or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law" (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 & n.9 (1980))).

Rule 54(b) provides that, unless the court has expressly determined that there is no reason for delay and directed entry of a final judgment for that reason,

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Because C.G.S. § 49-15 specifies that the judgment of strict foreclosure is inalterable after title becomes absolute, it conflicts with Rule 54(b) unless the foreclosure can be considered a final judgment. But "[a]n order adjudging liability but leaving the quantum of relief still to be determined has been a classic example of non-finality and non-appealability from the time of Chief Justice Marshall to our own." *Taylor v. Bd. of Educ.*, 288 F.2d 600, 602 (2d Cir. 1961); *accord Henrietta D. v. Giuliani*, 246 F.3d 176, 180-81 (2d Cir. 2001). C.G.S. § 49-14 reserves to the deficiency judgment proceeding, which follows the judgment of strict foreclosure, the determination of the value of the foreclosed-upon property and the amount of the deficiency judgment. Hence, the

to define the scope of the state-created right." *Id.* at 1452 (Stevens, J., concurring in part and concurring in the judgment). Under either of these tests, we find that Rule 54(b), like every other Federal Rule of Civil Procedure ever examined by the Supreme Court, is procedural.

judgment of strict foreclosure cannot be considered a final judgment because the quantum of relief is yet to be determined. The requirement that it be inalterable is therefore in direct conflict with Rule 54(b). The district court was properly governed by the federal procedural rule and correctly exercised its ability to reexamine its judgment of strict foreclosure.

Although acknowledging that it failed to file a claim in Defendants' probate proceedings as required by Washington estate law and hence that this claim would be barred were it litigated in Washington state courts, Plaintiff argues that its claim for a deficiency judgment is governed by Connecticut law and that Connecticut law does not give extraterritorial effect to foreign nonclaim statutes. We find that Washington law was properly applied to the issue of whether Plaintiff may maintain a breach of contract claim against the Estate and therefore need not address whether Connecticut law would recognize a foreign nonclaim statute. Under the Restatement (Second) of Conflict of Laws, which has been generally followed by Connecticut courts, *see Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.*, 703 A.2d 1132, 1137-38 (Conn. 1997), foreclosure-related issues that do not specifically affect an interest in the land itself "are determined . . . by the law which governs the debt for which the mortgage was given. Examples of such . . . issues [include] the mortgagee's right to hold the mortgagor liable for any deficiency remaining after foreclosure . . . ." Restatement (Second) of Conflict of Laws § 229 cmt. e. Because the debt here is pursuant to the mortgage note, we perform a contracts choice of law analysis.

Connecticut has adopted the "most significant relationship" approach to contracts choice of law, as advocated by the Restatement (Second). *Reichhold Chems.*, 703 A.2d

6

at 1138. There is a presumption that if the place of negotiation and place of performance are in the same state, here Connecticut, that state's local law will be applied. *Am. States Ins. Co. v. Allstate Ins. Co*, 922 A.2d 1043, 1047 & n.6. This can be overcome if another state has a sufficiently strong policy-based interest in having its own law applied, as determined by the application of the principles in § 6 of the Restatement. *Id.* at 1047 n.6. Those principles are:

> (a) the needs of interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) Conflicts of Laws § 6(2). Moreover, the choice of law analysis may be performed separately for each issue in the litigation, taking into account the states' interests with respect to that issue in particular. *See* Restatement (Second) Conflicts of Laws § 188 cmt. d; *see also Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.*, 750 A.2d 1051, 1056 n.5 (Conn. 2000); *Arrow Elecs., Inc. v. Fed. Ins. Co.*, No. X01CV000167080, 2002 WL 172662, at *5 (Conn. Super. Ct. Jan. 7, 2002); *Crockwell v. Gov't Employees Ins. Co.*, No. CV990090777, 2001 WL 1268116, at *6 (Conn. Super. Ct. Oct. 9, 2001). The relevant issue for analysis here is whether Plaintiff may maintain a breach of contract claim against the Estate.

As the district court noted, Washington has an undoubted and strong interest in the timeliness and finality of the administration of its domiciliaries' estates. Its nonclaim statute, which provides timely filing requirements for claims against an estate, limits the claims against the decedent's estate, expedites closing the estate, and facilitates the

distribution of the decedent's property. *See Nelson v. Schnautz*, 170 P.3d 69, 73 (Wash. Ct. App. 2007). On the other hand, because title to Connecticut property is not at issue and because the deficiency judgment is not sought against Connecticut citizens, Connecticut has little interest in having its law applied. Consistency and certainty, too, suggest that we apply Washington law. As Plaintiff acknowledged at oral argument, if we were to find that Plaintiff is entitled to a judgment in its favor, Plaintiff would then have to proceed to Washington to enforce that judgment against the estate; Washington would then be forced to determine whether to give credit to our judgment, raising concerns under the Full Faith and Credit Clause as well as generating inefficiency for the parties and the courts. *See, e.g.*, *In re Estate of Reynolds*, 970 P.2d 537 (Kan. 1998) (determining whether to give effect to a New York judgment against the estate of a Kansas decedent pursuant to a Kansas nonclaim statute). We therefore find that Washington law appropriately governs this issue. Plaintiff does not appeal the district court's determination that, under Washington law, its claim is barred; such an argument is therefore forfeit. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998).

Finally, Plaintiff appeals the district court's award of attorneys' fees to Defendants under a Connecticut consumer fee-shifting provision. This provision requires that, whenever a contract to which a consumer is a party "provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease." The statute applies, however, "only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes." Conn. Gen. Stat.

8

§ 42-150bb. Plaintiff contests the district court's finding that the mortgage at issue in this litigation was primarily for personal, family, or household purposes. This determination is one of fact and we therefore review for clear error. *India.Com, Inc. v. Dalal*, 412 F.3d 315, 320 (2d Cir. 2005); *Tyler E. Lyman, Inc. v. Lodrini*, 828 A.2d 676, 680 (Conn. App. 2003). The mortgage in question arose when decedent Jack Spitzer allowed his cousin Kate McCabe to refinance a mortgage on her home in his name via a limited power of attorney. Although Spitzer himself did not live on the mortgaged property and there was some evidence suggesting that Spitzer and McCabe had a plan to subdivide the property and sell a portion of it in order to pay off the mortgage, there is also substantial evidence, including the undisputed testimony of McCabe's attorney, suggesting that Spitzer's goal in engaging in these transactions was to help his cousin maintain her family home. We therefore hold that the district court did not commit clear error in finding that the property served a personal, family or household purpose.

All arguments not otherwise discussed in this summary order are found to be moot or without merit.

For the foregoing reasons, the judgment of the district court is hereby affirmed.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9