[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS TO STRIKE
The plaintiffs have filed a 277-page Revised Amended Complaint containing 124 counts directed against the accounting firm (Ernst Young, LLP) and lawyers (Levvy Droney, P.C., and Joseph Vitale) that are alleged to have been involved in the operation of a continuing care facility in Southbury known as East Hill Woods. The plaintiffs have also named as defendants Falls Church Group, a management company that served until January 18, 1991, and Cooperative Retirement Services of America, Inc., Monarch Management, Inc., Kedney Associates, Inc. ("CRSA corporate defendants") and several employees of the CRSA corporate defendants: M. Earl Wade, Bruce Cannon, Martin Satara, CT Page 12514 H.B. Kedney, Ron Rukstad and Bruce Byers ("CRSA individual defendants"). East Hill Woods, Inc. has not been named as a defendant.
The 177 plaintiffs, who are residents or former residents or their executors or representatives, allege that the defendants aided and abetted the developer of the facility in, among other things, misrepresenting its financial condition. The plaintiffs allege that the defendants also made misrepresentations and breached fiduciary duties, as well as duties allegedly owed to the plaintiffs as third party beneficiaries of the defendants' services.
The various defendants have moved to strike most counts of the complaint. Because many counts are addressed to more than one defendant, and since the grounds are repeated by the various defendants, the court will decide in this single ruling the motions to strike filed by the various defendants as they relate to the many counts of the revised amended complaint filed August 10, 1998.
Motions for summary judgment raising statute of limitation issues have been deferred to later adjudication, as the plaintiffs have been granted until November 16, 1998 to file documents in response to the motions for summary judgment filed by the CRSA and Falls Church Group defendants.
Portions of the motions to strike filed by Falls Church Group are based on the statute of limitation. Because the plaintiffs have asserted that they would reply to special defenses, pleading the expiration of the statute of limitations by invoking various tolling doctrines, this court has not decided the portions of the motions to strike based on the ground of the expiration of the limitation period but defers those issues to the further filing of affidavits and other submissions in connection with the motions for summary judgment.
 Standard of Review
The function of a motion to strike is to contest the legal sufficiency of the allegations of a complaint to state a claim upon which relief may be granted. Practice Book § 10-39;Novametrix Medical Supplies, Inc. v. BOC Group, Inc.,224 Conn. 210, 215 (1992); Ferryman v. Groton, 212 Conn. 138, 142 (1989). In adjudicating a motion to strike, the court takes the facts to be CT Page 12515 those alleged in the pleading or provable under those allegations, which are to be construed in the manner most favorable to sustaining the legal sufficiency of the complaint.Skukinski v. Bouchard Fuels, Inc., 240 Conn. 704-705 (1997);Bohan v. Last, 236 Conn. 670, 675 (1996); Waters v. Autuori,236 Conn. 820, 826 (1996); Sassone v. Lepore, 226 Conn. 773, 780
(1993).
The Supreme Court has distinguished, however, between "mere conclusions of law that are unsupported by the facts alleged" and the allegation of facts that support the elements of a cause of action. Novametrix Medical Supplies, Inc. v. BOC Group, Inc.,224 Conn. at 215; Cavallo v. Derby Savings Bank, 188 Conn. 281,285 (1982.); Bora v. Aetna Life Casualty Ins. Co.,13 Conn. App. 208, 211 (1988). The former will not be held to satisfy the requirement of pleading facts that state a cause of action.
 Violation of the Continuing Care Act (Counts 1-12)
Falls Church Group, the corporate CRSA defendants, and the individual CRSA defendants have moved to strike the counts of the revised amended complaint in which the plaintiffs allege that these defendants are liable under the Continuing Care Act, Conn. Gen. Stat. § 17b-529, for failing to provide them with accurate disclosures concerning the financial condition and viability of East Hill Woods. (Counts 1-12) The movants assert that the plaintiffs have not alleged facts that would be a basis for finding them to be "providers" of continuing care services under the Continuing Care Act, and that they are therefore not subject to liability under that statute.
At page 10 of their memorandum in opposition to the motion to strike of the individual CRSA defendants, the plaintiffs state that despite the inclusion of these defendants in the headings of counts 3-12, "[t]he plaintiffs do not claim that the CRSA Individual Defendants are individually liable in these counts." The motion to strike these counts is therefore granted as to the CRSA individual defendants.
With regard to the corporate CRSA defendants, which are alleged to have managed and marketed the East Hill Woods continuing care facility on behalf of East Hill Woods, Inc., the plaintiffs claim that they have stated a cause of action by alleging that CRSA "as provider or on behalf of a provider or providers, entered into contracts for continuing care" with CT Page 12516 plaintiffs. (Revised Amended Complaint, ¶¶ 288-90). That phrase in part defines the scope of those upon whom liability is imposed pursuant to Conn. Gen. Stat. § 17b-529(a). The full text of the provisions defining who shall be liable is as follows:
. . . Any person who as, or on behalf of, a provider, enters into a contract for continuing care at a facility without having first delivered a disclosure statement meeting the requirements of section 17b-522 to the person contracting for the continuing care, or enters into a contract for continuing care at a facility with a person who has relied on a disclosure statement that omits to state a material fact required to be stated therein or necessary in order to make the statements made therein, in light of the circumstances under which they are made, not misleading, is liable to the person contracting for the continuing care for damages and repayment of all fees paid to the provider, facility or person, less the reasonable value of care and lodging provided to the resident by or on whose behalf the contract for continuing care was entered into prior to discovery of the violation, misstatement or omission or to the time the violation, misstatement or omission should reasonably have been discovered, together with interest thereon at the legal rate for judgments, and court costs and reasonable attorneys fees. An action to enforce liability pursuant to this section shall not be maintained unless brought within six years after the execution of the contract for continuing care giving rise to the liability.
The plaintiffs have alleged that the corporate CRSA defendants entered into contracts with plaintiffs for continuing care at East Hill Woods on behalf of East Hill Woods, Inc. or as a provider itself. "Provider" is defined in the Continuing Care Act at Conn. Gen. Stat. § 17b-520(d) as "any person, corporation, limited liability company, business trust, trust partnerships, unincorporated association or other legal entity, or any combination of such entities, undertaking to furnish shelter and medical or nursing services or other health related benefits pursuant to a continuing-care contract."
The corporate CRSA defendants point out that in their brief the plaintiffs' attempt to equate marketing efforts with entering into a contract; and they imply that the plaintiffs will never be able to produce any continuing care contract into which these defendants entered either as providers or on behalf of providers. CT Page 12517 It is, of course, the allegations of the complaint, not statements in a brief, that determine whether facts supporting the required elements of a cause of action have been pleaded. In fact, as to Count Three, the plaintiffs do not allege that the CRSA corporate defendants actually entered into a continuing care contract either as or on behalf of a provider with those plaintiffs identified in Exhibit 1. Rather, paragraph 288 of the complaint alleges liability based on acts other than entering into a contract for continuing care:
 The defendants CRSA, Monarch, Kedney, and the CRSA individual defendants, as providers or on behalf of a provider or providers, entered into contracts for continuing care with all the plaintiffs identified in Exhibit 1 by accepting entrance fees from them and by allowing and encouraging them to occupy their East Hill Woods units and thereby to give up their rights to receive a report under their Residence Agreements.
At paragraph 289, the plaintiffs listed in Exhibit 1 allege that executing "apartment upgrades, apartment change or similar agreements" and "accepting payment of higher deposit amounts" constituted "enter[ing] into contracts for continuing care."
By contrast, as to the plaintiffs listed in Exhibit 2 of the revised amended complaint, the plaintiffs allege simply that the CRSA corporate defendants "entered into contracts for continuing care." (¶ 290).
The plaintiffs' complaint plainly alleges in Count 4, at paragraph 290, the elements of a statutory claim; and the motion to strike these counts is denied as to the plaintiffs listed in Exhibit 2. The plaintiffs listed in Exhibit 1, however, have alleged that accepting an entrance fee on behalf of a provider or encouraging a plaintiff to begin occupying a unit is the equivalent of "enter[ing] into a contract for continuing care at a facility" within the meaning of § 17b-529(a). The text of this provision makes it quite clear that the requirement is to provide disclosure to those who made the decision to sign a contract for continuing care at a residential facility, not those who enter into different transactions. The contents of a continuing care contract are presented at § 17b-523, leaving no room for a construction by which each part of the transaction CT Page 12518 of selecting a unit would constitute a "continuing care contract".
The allegations made in Count 5 as to the plaintiffs listed in Exhibit 3 state a claim. With regard to the plaintiffs identified in Exhibit 1 to the revised amended complaint, the revised amended complaint does not allege what must be alleged if the movants are to be held liable, rather, these counts allege participation in transactions not defined as giving rise to liability under § 17b-529(a).
The plaintiffs' claims in Counts One through Twelve are set forth in a circuitous manner. The plaintiffs are grouped on various exhibits and the final paragraph of each count, after discussion of other groups on other exhibits in prior paragraphs under the count, indicates that the count relates only to the plaintiffs listed on a particular exhibit.
The court finds that the plaintiffs have pleaded the elements of a cause of action against the movants in Counts 4, (Exhibit 2); Count Five (Exhibit 3); Count Six (Exhibit 4); Count Seven (Exhibit 5); Count Eight (Exhibit 6); Count Nine (Exhibit 7); Count Ten (Exhibit 5); Count Eleven (Exhibit 9); and Count Twelve (Exhibit 9). The motions to strike of the CRSA corporate defendants are denied as to those counts and granted as to Count Three.
In Count One of the revised amended complaint, the plaintiffs allege, at paragraph 220, that RCAI, "as a provider or on behalf of a provider, entered into contracts for continuing care with the plaintiffs identified in Exhibit 1. . ." This allegation is sufficient to state a claim against RCAI's successor, Falls Church Group. The motion of Falls Church Group to strike Counts One and Two for legal insufficiency is denied. The statute of limitations issue raised by Falls Church Group has been deferred.
 Aiding and Abetting Violation of Conn. Gen. Stat. § 17b-529(a) (Counts 13-24
The defendants have moved to strike the claims made against them in Counts 13-24, in which the plaintiffs allege that they are liable for aiding and abetting a violation of Conn. Gen. Stat. § 17b-529(a) by East Wood Hills. The defendants assert that no statutory cause of action for aiding and abetting exists under the provisions of the Continuing Care Act. That CT Page 12519 statute, at § 17b-529(a), imposes liability on "[a]ny person who as, or on behalf of a provider, enters into a contract for continuing care at a facility without first having delivered a disclosure notice meeting the requirements of Section 17b-522 to the person who contracts for the continuing care or enters into a contract for continuing care at a facility with a person who has relied on a disclosure statement that omits to state a material fact required to be stated therein or necessary in order to make the statements made therein, in light of the circumstances under which they are made, not misleading."
The defendants all assert that they cannot be characterized as having entered into contracts with the plaintiffs for continuing care either for themselves or "on behalf of a provider" within the meaning of § 17b-529(a).
The plaintiffs argue that they are not alleging direct violations of the Continuing Care Act by the defendants but that Counts 13-24 are to be understood as alleging a common law cause of action, not a statutory cause of action, for aiding and abetting another in a statutory violation. The trouble with this argument is that it is belied by the text of the counts, which are phrased as asserting statutory violations. All these counts end with the allegation that the plaintiffs are entitled not to common law remedies but to the remedies provided for a statutory violation: "Pursuant to Conn. Gen. Stat. § 17b-529(a) the plaintiffs . . . are entitled to damages and the repayment of all fees, together with interest thereon, court costs, and reasonable attorney's fees." (Emphasis supplied) (See Revised Amended Complaint, paragraphs 224, 294, 311, 328 and 335.)
The plaintiffs have not alleged that any of the defendants named in Counts 13-24 entered into contracts with any of the plaintiffs for continuing care at a facility either "as or on behalf of a provider"; rather, the allegations are that each defendant "aided and assisted East Hill Woods in the entering into of contracts for continuing care." (See Revised Amended Complaint, paragraphs 220, 290, 307, 324 and 331). By its terms, the Continuing Care Act does not impose liability for the statutory remedies set forth at § 17b-529(a) on anyone other than those who enter into contracts for continuing care at a facility "as or on behalf of a provider." The statute contains no provision of statutory liability for any universe of aiders and abetters of violations unlike, for example, the Securities and Business Investments Law (formerly known as the Connecticut CT Page 12520 Uniform Securities Act) at Conn. Gen. Stat. § 36b-29(c), which imposes statutory liability on agents of violators.
The defendants argue that the lack of coverage under the Continuing Care Act of aiders and abetters of violations means that no common law liability can exist either. This court does not agree with that position.
Section 17b-520(c) provides that "nothing contained in Sections 17b-520 to 17b-535 inclusive, shall be construed to limit the remedies a person has under any other process of law."
The Connecticut Supreme Court has recognized common law liability for aiding and abetting the violation of a statute as a cause of action separate and distinct from statutory liability for aiding and abetting. In Connecticut National Bank v.Giacomi, 242 Conn. 17 (1997) ("Giacomi II"), the Court found that certain defendants who defended a suit on a note by accusing the plaintiff bank of aiding and abetting a violation of the Connecticut Uniform Securities Act had properly been held to have prevailed on defenses based on statutory prohibitions against aiding and abetting but that other defendants had not proved such defenses. In the case of the latter litigants, the Court went on to consider their claims that the plaintiff bank was barred from recovering on its notes because it was liable as a common law aider and abettor, Giacomi II, 242 Conn. at 63-64. The Supreme Court found that the trial court had not made sufficient findings to determine whether the defendants had met the standard of proof for common law aiding and abetting, but it tacitly acknowledged that such common law liability existed. The Supreme Court observed that the standard for a claim of common law aiding and abetting is set forth in Carney v. DeWees, 136 Conn. 256, 262
(1949). Conspicuously, the Court did not decide that no liability for common law liability could exist as to a violation based on the CUSA, even though it had also found in Giacomi II
that the plaintiffs failed to satisfy the CUSA's statutory liability for persons acting as agents of a violator.
The defendants have observed that express provisions for liability for aiding and abetting a violation exist in a myriad of regulatory statutes. The ruling in Giacomi II, however, indicates that the presence or absence of such statutory coverage is not determinative of the existence of common law liability for aiding and abetting, since both statutory and common law liability were found to be available in that case.[1]
CT Page 12521
The Continuing Care Act expressly preserves at § 17b-529(c) other "remedies a person has under any other process of law." The common law cause of action for aiding and abetting a violation is such a remedy, and the words of this statute require that its continued existence be acknowledged.
The CRSA defendants have raised a further basis for striking the counts alleging liability for aiding and abetting under the Continuing Care Statute, that is, that such a common law claim requires allegation and proof that the claimed aider and abetter knew of the wrongful act on the part of the aider and abetter.
A common law claim for aiding and abetting a statutory violation or tort has been recognized by the Supreme Court inCarney v. DeWees, supra, and approved in Slicer v. Quigley,180 Conn. 252, 259 (1980), citing the First Restatement of Torts, § 876:
 for harm resulting to a third person from the tortious conduct of another, a person is liable if he . . . (1) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.
The CRSA defendants note that the plaintiffs have failed to allege facts indicating that they knew that the conduct of East Hill Woods, Inc. constituted a breach of its duties to the persons with whom East Hill Woods contracted to provide continuing care assistance. At paragraphs 192-195 of their revised complaint, the plaintiffs allege that all defendants "knew or should have known" of the requirements applicable to continuing care facilities in Connecticut and the obligation of East Hill Woods to provide accurate financial evaluations. The plaintiffs allege that various disclosure statements were used that did not comply with statutory requirements (¶ 206-210, 227-233), and that the CRSA defendants were responsible for managing East Hill Woods from January 1991 through at least 1995 (revised Complaint ¶ 183). The plaintiffs do not actually allege either the scienter required by § 876 of the Restatement or facts indicating knowledge. The alternative pleading of "knew or should have known" would allow a common law claim for aiding and abetting to be maintained if the defendants were negligent in not knowing the statutes requirements ("should have known"). The Restatement does not authorize liability on CT Page 12522 that basis. The Continuing Care Act does not provide for statutory liability for aiding and abetting, and the present pleadings do not allege facts supporting the elements of a common law claim for aiding and abetting a violation of that statute. The motions to strike Counts 13-24 are granted.
 Causes of Action based on Claimed Fiduciary Relationship (Counts 47-51)
Ernst Young and the individual CRSA defendants have moved to strike the claims against them (Counts 47-51) on the ground that the plaintiffs have failed to allege facts that would support a finding that a fiduciary relationship existed between them and the plaintiffs. While the plaintiffs have invoked a reluctance of trial judges to determine the existence of a fiduciary relationship upon a motion to strike, see, e.g. Winterv. Nationwide Mutual Ins. Co., 1 CONN. L. RPTR. 668, 1990 WL283942 (Conn.Super. 1990); Carloni v. Palumbo, 1992 WL 183219 (Conn.Super. 7/21/92); this reluctance has been based on the reasoning that the existence of a fiduciary relationship is a question of fact and that such questions may not properly be adjudicated upon a motion to strike. The function of a motion to strike, however, is to determine whether a cause of action has been stated by the facts pleaded. Practice Book § 10-39. The issue before this court is not whether the facts prove a fiduciary relationship but whether the plaintiff has alleged facts which, if proved, would support the finding that one existed. The plaintiffs state conclusorily that "[t]he allegations of the Amended Complaint are sufficient to withstand the defendant's motion" (Plaintiffs Memorandum in Support of Objection to Ernst Young's Motion to Strike, p. 31) without indicating what allegations they claim would support the basic elements of a claim of breach of fiduciary duty by the defendants, namely, facts indicating the existence of a fiduciary relationship. The Connecticut Supreme Court has ruled that a fiduciary relationship exists where there is "a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other," Konover Development Corp.v. Zeller, 228 Conn. 206, 218 (1996) (quoting Dunham v. Dunham,204 Conn. 303, 322 (1957)), or where a party has made representations that he would take care of another party's financial interests. Alaimo v. Roger, 188 Conn. 36, 40-41 (1982) In Konover, the Court found that partners in a partnership have fiduciary duties to each other and to the partnership. InDunham, the claimed fiduciary was the executor of the will of his and the plaintiff's mother, had represented the plaintiff as legal CT Page 12523 counsel, and was his older brother.
The plaintiffs have alleged that Ernst Young performed accounting services for East Hill Woods, with whom each of the plaintiffs contracted for continuing care services, and that Ernst Young knew purchasers would rely on their accounting reports. The plaintiffs have not alleged that Ernst Young was ever hired by any of the plaintiffs or that Ernst Young ever represented that it would occupy a position of trust with regard to the plaintiffs' interests. The plaintiffs assert, in effect, that a fiduciary relationship is sufficiently alleged merely by alleging reliance on the acts or work product of another. The plaintiffs have alleged that the CRSA individual defendants "managed and marketed East Hill Woods," and had frequent contact with the plaintiffs, and that the elderly plaintiffs relied on them. These allegations do not sufficiently allege the existence of a fiduciary relationship as defined in the cases cited above.
The pleadings in this case are very different from those that withstood a motion to strike in Gengras v. Coopers and Lybrand, 1994 WL 133424 (Conn.Super. 1994). In that case, the defendant accounting firm was alleged to have agreed to perform services for a partnership, and the issue was the extent of its fiduciary duties, if any, to various partners with respect to misdeeds of other partners. The plaintiffs alleged that they were clients of the defendant. Since clients may be owed fiduciary duties, and since the plaintiffs had asserted client status, the motion to strike was denied.
In the case before this court, the plaintiffs do not allege facts that indicate that they had any relationship with Ernst 
Young or with the individual CRSA defendants, but only the conclusion that defendants "owed to all the plaintiffs identified in Exhibit 1 a fiduciary duty." According to the standard of review stated above, in the absence of any factual allegations in the complaint that would support the legal conclusion of the existence of a fiduciary relationship by alleging any elements and indicia of such a relationship, the plaintiffs have failed to state a cause of action against Ernst Young and the individual CRSA defendants in these counts. The court grants the motions of Ernst Young and the individual CRSA defendants to strike the claims made against them in these counts.
 Fraudulent Nondisclosure (Counts 28-31, 34-35, 38-39) CT Page 12524
Ernst Young has moved to strike the counts of the complaint in which the plaintiffs allege fraudulent nondisclosure. The movant notes that this cause of action has been recognized only when the alleged perpetrator of the fraud is attempting through fraudulent representations or nondisclosure to cause another to act in reliance thereon in ways that benefit the perpetrator. Unlike causes of action based on a duty of care to avoid foreseeable harm to others, a cause of action for fraud requires an allegation of inducing action to benefit the tortfeasor or his principal at the expense of the person acting in reliance. Duksav. Middletown, 173 Conn. 124 (1977); Jackson v. Jackson,2 Conn. App. 179, 193 (1984).
The plaintiffs have not alleged facts to the effect that any nondisclosure by Ernst Young was made to induce the plaintiffs to act in a manner that benefitted [benefited] the accounting firm, nor that Ernst Young was the agent of East Hill Woods with regard to such a purpose. Rather, this court finds the situation with respect to claims of fraud to be analogous to the circumstances in McLaughlin v. Capitol Housing Finance Corp., 1994 W.L. 530230 (Conn.Super. 1994), in which issuers of fraudulent disclosures were not alleged to have a duty of disclosure. See Duksa v.Middletown, 173 Conn. 124, 127 (1997); Egan v. Hudson NutProducts, 142 Conn. 344, 347-48 (1955); Jackson v. Jackson,2 Conn. App. 179, 194, cert. denied, 194 Conn. 805 (1984).
The motion to strike these counts against Ernst Young is granted.
 Negligence (Counts 59-63) and Negligent Misrepresentation (Counts 67-84)
Ernst Young and the individual CRSA defendants have moved to strike the plaintiffs' negligence and negligent misrepresentation counts on the ground that the facts fail to indicate a duty of care owed to the plaintiffs. The individual CRSA defendants have also moved to strike the claims of misrepresentation made against them in Counts 28-45 (misrepresentation), pointing out that officers and agents of corporations are not individually liable for the torts of the corporation, and that the plaintiffs have not alleged that they had any individual involvement in the acts alleged in these counts.
The plaintiffs have responded by explaining at paragraph 10 CT Page 12525 of their Memorandum in Support of Objection to CRSA Individual Defendants' Motion to Strike that "[t]he plaintiffs do not claim that the CRSA Individual Defendants are individually liable in these counts." Since the heading of these counts suggests that liability is being asserted against these individual defendants, their motion to strike these counts is granted to ensure that the record reflects what the plaintiffs now represent was their intent in these counts.
Ernst Young asserts that the facts set forth by the plaintiffs in Counts 28-31, 34-35, 38-39 and 42-43 do not allege the existence of a cognizable duty of care by accountants to third parties who are not clients of the accounting firm. Ernst Young urges this court to adopt and apply a "near privity" standard by which some courts in other states have limited the duty of care of accountants to those with whom the accountant is in privity or has a relationship "so close as to approach that of privity." See Credit Alliance Corp. v. Arthur Andersen Co.,65 N.Y.2d 536, 483 N.E.2d 110, 115 (1985).
While the Connecticut Supreme Court has not determined the scope of the duty of care of accountants whose reports may be relied on by non-clients, it has very recently discussed the general principles to be applied in determining the existence of a duty of care, and it appears that this approach, rather than the "near-privity" standard used elsewhere, should be the path of analysis followed.
The Supreme Court has ruled that:
 The existence of a duty of care is a question of law and only if such a duty is found to exist does the trier of fact then determine whether that defendant violated that duty in a particular situation at hand.
Mendillo v. Board of Education, 246 Conn. 456, 483; Lodge v.Arett Sales Corp., 246 Conn. 563, 572 (1998). The Court inMendillo and Lodge defined the test for the existence of a legal duty of care as an issue of forseeability of harm paired with public policy considerations concerning the extent of the consequences that should be included in the scope of liability of an allegedly negligent party: CT Page 12526
 We have stated that the test for the existence of a legal duty of care entails a) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and 2) a determination, on the basis of public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case R.K. Constructors, Inc. v. Fusco Corp., 231 Conn. at) 386-87; (Internal quotation marks omitted.) Zamstein v. Marrasti, (240 Conn. 549, 558, 692 A.2d 781 (1997). The first part of the test involves the question of forseeability, and the second part involves the question of policy.
Mendillo v. Board of Education, 246 Conn. at 483-84; Lodge v.Arett Sales Corp., 246 Conn. at 572-573.
In Waters v. Autuori, 236 Conn. 820, 826, 835 (1996), the Supreme Court likewise discussed the elements of forseeability and public policy in determining whether a trade association that established standards for use by accountants had a duty of care to persons who claimed injury from adherence to those standards. One of the public policy considerations discussed in Waters was the issue of the huge breadth of potential exposure that would result from the recognition of a duty of care of a trade association toward the clients of all of the adherents to the standards of performance that it promulgated. Waters v. Autuori,236 Conn. at 835. Similarly, in Mendillo, the Court analyzed the hazard that recognition of a duty of care toward relatives of injured parties would create very wide and unpredictable exposure to liability and necessitate making distinctions between those eligible and not eligible for compensation on arbitrary distinctions of kinship, regardless of actual harm suffered.
The requirement of forseeability is certainly met. Where accounting services are furnished with the alleged knowledge that the resulting reports are to be used in a statutorily-required disclosure to elderly persons investing what may be their life savings in a continuing care facility, harm to the entrants from misstatement is plainly forseeable. CT Page 12527
While concepts derived from cases in which the claim is for personal injury are not directly translatable into other contexts, the Connecticut Supreme Court has based its consideration of public policy on the breadth of the potential liabilities created by recognition of a duty of care (Mendillo) and the likelihood or lack of likelihood that recognition of liability will increase the care taken or decrease the risks created. (Lodge, 246 Conn. at 582: "Consequently, alarm companies already have significant incentive to avoid generating false alarms. Imposing liability for unforeseen consequences would not increase their impetus to act with due care.")
Accounting firms that prepare reports of financial condition for the purpose of disclosure to consumers mandated by statute may be swayed by the business interest of the developer who is their client, even though the purpose of their work is, by statute, to serve the interests of the consumers with whom their client is contracting. The universe of persons to whom the accounting firm would owe a duty of care is finite: the customers for the particular number of units in the project for which the accounting firm is hired to prepare disclosures. The chimera of "a class of indefinite extension" is not presented, as it was inUltra Mares Corp. v. Touch, 255 N.Y. 170, 181, 174 N.E. 441 (1971), on which the movant relies.
The policy consideration of the "weight of judicial authority" (Mendillo v. Board of Education, 246 Conn. at 490) is illuminated by the fact that the Connecticut Supreme Court has, in other business contexts involving the provision of information by one party to another, cited with approval § 552 of the Restatement (Second) of Torts (1977):
 One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary losses caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575
(1995).
The cited section of the Restatement of Torts (Second), § 552, CT Page 12528 is titled "Information Negligently Supplied for the Guidance of Others." In relevant part, it provides that "One who, in the course of his business profession or employment, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justiciable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." The liability "is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he . . . knows that the recipient intends to supply it and . . . through reliance upon it in a transaction that he . . . knows that the recipient so intends. . ."
In Williams Ford Inc. v. The Hartford Courant Co., supra232 Conn. 554, the claim of misrepresentation was that the defendant newspaper was misrepresenting to automobile dealership that the only way to reduce advertising costs was to buy bigger contracts. In fact, the rate structure included "consecutive contracts" that entailed lower rates. Sales representatives of the defendant were alleged to have told dealerships that consecutive contracts were not available and/or would not result in savings. The Supreme Court applied § 552 of the Restatement. Contrary to the position of the movants in the case before this court, the Supreme Court did not view the issue as involving a universe of all those persons who might consider buying advertising, finding that the claimed duty of care was too broad to give rise to liability. Instead, the Court recognized that the duty of care was owed to those who actually came forward to enter into transactions with the defendant. Similarly, in this case, application of the duty recognized at § 552 of the Restatement is properly applied to those who relied on representations prepared by Ernst Young for the purpose of East Hill Woods' fulfillment of its statutory duty to make disclosures to those with whom it entered into continuing care contracts.
The plaintiffs have alleged, inter alia, that the defendants against whom liability for negligent misrepresentation is alleged, including the individual CRSA defendants, prepared disclosure statements that were known to be prepared for use in making representations to those entering into contracts with East Hill Woods, and that these reports and disclosures were negligently prepared in that they contained unreasonable projections, omitted known risks, and included favorable projections instead of unfavorable historical data concerning occupancy and risks. CT Page 12529
The movants allege the discovery has led them to believe that many plaintiffs did not read and/or did not rely on their work, such that some plaintiffs will not be able to prove all the elements of their claims. Such prognostications as to the plaintiffs' ability to prove their claims are not justiciable upon a motion to strike. The motions to strike of Ernst Young are denied as to Counts 59-63, and 67-84.
 Aiding and Abetting Misrepresentation, Negligent Misrepresentation and Breach of Fiduciary Duty (Counts 85-113)
All defendants have moved to strike the counts in which the plaintiffs allege that they are liable for aiding and abetting East Hill Woods in making both intentional and negligent misrepresentations, and in breaching the duty of care owed to them by East Hill Woods as an alleged fiduciary. The plaintiffs assert that these claims are cognizable pursuant to § 876 of the Restatement (Second) of Torts; which is discussed above. The movants have correctly noted, however, that in order to state a cause of action for aiding and abetting the commission of a tort, a plaintiff must allege that the alleged aider or abettor not only gave substantial assistance to the tortfeasor to so conduct itself but also knew that the other's conduct constituted a breach of duty.
In counts 85-113, the plaintiffs have alleged that the defendants provided substantial assistance to East Hill Woods in committing the various torts; however, they have not pleaded the element of knowledge that East Hill Woods conduct constituted a breach of duty in that the assistance was given to enable the tortfeasor to conduct itself in a manner that breached its duty to the plaintiffs. The plaintiffs parse § 876 as though it required merely (a) a determination that the party with direct duties to the plaintiffs committed a tort, and (b) participation by the other defendants in the activities constituting the tort. Such an interpretation ignores the element of scienter: aiding the tortfeasor to commit what the aider knows to be a tort.
While the plaintiffs correctly assert that the element of scienter may be proved by inferences and circumstantial evidence;Roth v. Blyth, Eastman Dillon Co., 570 F.2d 38, 47 (2d Cir. 1978); the issue in the instant case is not the sufficiency of proof but the sufficiency of the pleading to allege facts supporting all required elements of the cause of action invoked. CT Page 12530 In Ferryman v. Groton, 212 Conn. 138, 145-46 (1989), a third party plaintiff did not expressly allege the nature of its relationship with a party it claimed had a duty to take safety precautions at the property where the plaintiff's decedent was injured. The third party alleged facts indicative of the other party's control without ever alleging a landlord-tenant or other relationship. The Supreme Court ruled that it was not necessary to characterize the relationship so long as the facts alleged disclosed the essentials of a kind of relationship that might give rise to an express or implied duty of care: "[w]hat is necessarily implied need not be expressly alleged." Ferryman v.Groton, 212 Conn. 146, quoting Wexler Construction Co. v. HousingAuthority, 144 Conn. 187, 193, 128 A.2d 540 (1956).
The plaintiffs, by contrast, have not directed this court to those paragraphs of their voluminous complaint in which they claim to have set forth facts that would support a finding of the necessary scienter. No such facts are alleged within the counts captioned above; however, in each of those counts the plaintiffs have incorporated by reference paragraphs 1 through 330 of the Eleventh Count.
At paragraphs 213-215, the plaintiffs allege that RCAI (the predecessor of defendant Falls Church Group) and Levy Droney had been advised by the state regulatory authority that East Hill Woods had, in the department's judgment, entered into continuing care contracts without providing residents with disclosure statements that complied with the law and applicable regulations, and that amended disclosure statements must be provided to residents who had signed contracts. The plaintiffs allege at paragraph 225 that a February 1991 disclosure statement "prepared and/or reviewed, in whole or in part" by all the defendants other than the Falls Church Group was rejected by the Department of Aging but that "the defendants" permitted and encouraged the plaintiffs to occupy the facility despite the non-existence of an approved disclosure statement (Paragraph 234). The plaintiffs alleged at paragraphs 248, 249 and 251 that the defendants participated in preparing a new disclosure statement, allegations from which it can be inferred that they knew they had used unauthorized disclosures in earlier transactions.
With regard to any conduct occurring after preparation of the 1991 disclosure statements, the plaintiffs allege that the CRSA defendants had a contract that required them to assist in the preparation and issuance of audited financial statements CT Page 12531 (paragraph 275), an allegation which, combined with the statements concerning earlier involvement with the preparation of disclosures, alleges a knowledge of East Hill Woods' obligation to prepare and disclose accurate financial information.
With regard to financial audits after the disclosure statements, the plaintiffs hedge their allegations against Ernst Young, stating at paragraph 276 that this defendant "knew orshould have known that the results of the financial audits of East Hill Woods would be provided, pursuant to the requirements of State law, to among others, the State of Connecticut Department on Aging and residents and prospective residents of East Hill Woods." As has been observed above in connection with the alleged common law claims of aiding and abetting violations of the provisions of the Continuing Care Act, the plaintiffs' alternative use of "knew or should have known" in paragraphs 277-279 leaves them alleging that Ernst Young can be liable as an aider or abettor on the basis of what it "should have known" as opposed to what it knew. Section 876 of the Restatement does not recognize a duty to find out another party's obligations, but only to refrain from aiding and abetting violation duties the aider knows the other to have.
All of the allegations regarding the CRSA defendants relate to their rendering of assistance, not their knowledge of any obligations of East Hill Woods defendants to the plaintiffs. By contrast, the plaintiffs allege that Vitale and Levy and Droney had been retained to assist in the preparation and provision of East Hill Woods' statutory disclosure. (Paragraph 281).
The favorable approach to pleadings required upon motions to strike does not excuse plaintiffs from making any allegations from which an inference of knowledge of duties or obligations could be made. Despite a diligent search of the allegations and a most generous construction of them, this court finds no allegations of fact supportive of the element of scienter with regard to Ernst Young and the CRSA defendants. The motion to strike these counts is granted as to them and denied as to Levy 
Droney and Joseph Vitale, whose knowledge of the obligations of East Hill Woods is inferentially alleged.
Falls Church Group has moved to strike the corresponding aiding and abetting allegations that the plaintiffs make against it in Counts 85-86 and 102-103 relating to the role of RCAI, to whose liabilities it is alleged to be a successor. CT Page 12532
RCAI is alleged to have been the managing agent for East Hill Woods before January 18, 1991. The plaintiffs have alleged at ¶ 196 that RCAI contracted to "ensure East Hill Woods' compliance with all applicable Connecticut laws, rules and regulations" and to cause the legally required disclosure statements and financial statements to be prepared. The plaintiff has alleged facts concerning communication with the State Department on Aging from which an inference can be made that RCAI knew of non-compliances (¶¶ 211-216) and that it was aiding non-compliance with East Hill Wood's duties and obligations to the plaintiffs. The motion to strike counts 85-86 and 102-103 is denied. Falls Church Group has also moved to strike Count 96, in which the plaintiffs allege aiding and abetting East Hill Woods' breach of fiduciary duties. Favorably construed, the plaintiffs' allegations include factual statements that could be construed as constituting a fiduciary relationship between East Hill Woods, Inc. and the plaintiffs. Since facts supporting scienter by RCAI are alleged, the plaintiffs have stated a cause of action, and the motion to strike Count 96 is denied.
 Violations of CUTPA (Counts 119, 120-124)
Defendant Falls Church Group and the individual CRSA defendants have moved to strike the plaintiffs' claims that it violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110, et seq. Falls Church claims that since CUTPA is a statutory cause of action with a statutory limitation period, various tolling doctrines that the plaintiffs may invoke with regard to other claims do not apply to CUTPA claims. Falls Church notes that the plaintiffs have alleged in their complaint that it ceased being the management company for East Hill Woods on January 18, 1991, and that the three-year limitation period set forth in CUTPA at § 42-110g(f) has, as a matter of law, run on any claims against it arising under CUTPA.
The Connecticut Supreme Court ruled in Fichera v. Mine HillCorporation, 207 Conn. 204, 214-216 (1988), that the three-year statute of limitation provided in CUTPA does not begin to run until the completion of conduct that is of a continuing nature, but that it is not subject to tolling on the ground that the defendant fraudulently concealed the existence of the plaintiffs' cause of action. The Court opined that it was convinced that the application of Conn. Gen. Stat. § 52-595, (which tolls CT Page 12533 limitation periods for fraudulent concealment) to CUTPA claims "would defeat the legislative intention expressed in § 42-110g(f) to bar actions for CUTPA violations after the lapse of more than three years from their occurrence.
The plaintiff adverts to dicta in a footnote in Connell v.Colwell, 214 Conn. 242, 246 n4 (1990), in which the Supreme Court stated that ". . . we conclude that the exception contained in § 52-595 constitutes a clear and unambiguous general exception to any statute of limitations that does not specifically preclude its application." The statute of limitation at issue in Connell v. Colwell, a medical malpractice case, was Conn. Gen. Stat. § 52-584. The cause of action was one at common law, not a statutorily-created cause of action, such as CUTPA claim. Given this context, it is impractical to read this dictum as an overruling of the very specific holding in Fichera, which involved a CUTPA claim and which has never been explicitly overruled. The Supreme Court, moreover, affirmed the unavailability of the tolling doctrine (as distinguished from new liability for later deceptive acts) in Willow Springs CondominiumAssociation, Inc. v. Seventh BRT Development Corp., 245 Conn. 1,46 (1998).
In their brief in opposition to Fall Church's motion to strike the CUTPA count, the only argument raised by the plaintiffs in avoidance of the three year limitation period codified in CUTPA is tolling on grounds of fraudulent concealment of the cause of action. The plaintiffs have not claimed a continuing course of conduct; rather they allege that RCAI ceased its management services in 1991. The complaint does not allege continuing conduct after 1991 by RCAI. Pursuant to the holding in Fichera, the tolling doctrine based on fraudulent concealment is not available to the plaintiffs, and the motion to strike this CUTPA claim is granted, since on its face the complaint is brought more than three years after the conduct alleged to have violated CUTPA.
The CRSA individual defendants have also moved to strike CUTPA claims made against them at Counts 120-124 of the revised amended complaint. These movants claim that to the extent that any of the prior 119 counts against them is legally insufficient, CUTPA claims based on the same conduct are legally insufficient. The movants cite no authority for this proposition.
Liability under CUTPA is not established by alleging and CT Page 12534 proving the elements of some other cause of action; rather, CUTPA provides an independent cause of action for "unfair or deceptive acts or practices in the conduct of any trade or commerce" Conn. Gen. Stat. § 42-110b(a). Particular conduct claimed to violate the act is actionable without regard to the elements of other causes of action. The test is whether the conduct meets the criteria set forth by the Connecticut Supreme Court inWilliams Ford, Inc. v. Hartford Courant Co., supra,232 Conn. 559, citing Conway v. Prestia, 191 Conn. 484, 492-93 (1983), the so-called "cigarette rule" (so named because the standard was set forth in Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8324, 8355 (1964)).
The CRSA defendants have not provided any analysis of the adequacy of the allegations against them under the "cigarette rule" but have merely argued that a CUTPA claim cannot survive if another claim based on the same facts is stricken. On that basis, the motion to strike the CUTPA claims against these defendants is denied.
 Third Party Beneficiary Claims (Counts 52-57)
The Falls Church Group (Counts 52), Ernst Young (Counts 53-57), and the individual CRSA defendants (Counts 53-57) have moved to strike the counts of the complaint in which the plaintiffs claim that these defendants are liable to them for breach of the defendants' contracts "to ensure East Hill Woods' compliance with applicable Connecticut laws, rules and regulations, failing to provide proper financial information, failing to issue and audit financial statements properly, and failing to disclose such facts, both before and after the execution of the Residence Agreements." (Revised Amended Complaint, ¶ 334). The plaintiffs allege that they were intended third-party beneficiaries of the alleged contracts and that they were damaged as a result of breach by the defendants.
The individual CRSA defendants claim that the plaintiffs have failed to allege fact to support their claims against any one of them but have merely pleaded that they were collectively responsible for managing and marketing East Hill Woods from January 19, 1991 through June 1996 and that as employees of CRSA, the individual CRSA defendants performed the management and financial functions necessary to the operation of East Hill CT Page 12535 Woods.
The plaintiffs have not, in fact, alleged that any one of these individuals entered into a contract with East Hill Woods as to which any plaintiff was an intended third party beneficiary. The plaintiffs have breezily argued as though a contract between corporations employing these defendants and East Hill Woods was the equivalent of a contract between each such individual employee and East Hill Woods. It is axiomatic that when a corporation enters into a contract, it has not rendered each of its employees individually liable for each of its obligations under that contract. See Scribner v. O'Brien, Inc.,169 Conn. 389, 404 (1975); Jacobs v. Williams, 85 Conn. 215 (1912); RobertT. Reynolds Assoc. v. Asbeck, 23 Conn. App. 247, 253 (1990). It is the corporation, as the contracting party, that is liable, whether to a primary beneficiary, that is, the other party to the contract, or to an intended third party beneficiary. Since it is not alleged in any of the many paragraphs of these counts that M. Earl Wade, Bruce Cannon, Martin Satava, H.B. Kedney, Bruce Byers, or Ron Rukstad ever individually entered into any contract to perform services for East Hill Woods, but only that the corporation that employed them did so, the plaintiffs have failed to state claims of breach of contract by these defendants.
Falls Church Group, which has moved to strike Count 52, asserts that the plaintiffs have failed to allege that it intended to benefit the plaintiffs when it entered into a management contract with East Hill Woods for a period ending on January 18, 1991. Similarly, the plaintiffs have not alleged in Counts 53-57 that Ernst Young entered into a contract in which it undertook a direct obligation to the plaintiffs.
The Connecticut Supreme Court has explicitly held that in order to establish a right to enforce a contract as a third party beneficiary, a plaintiff must establish that the contracting parties intended to create not just an incidental benefit but a direct obligation of the promissor to him as a third party.Gateway Co. v. DiNoia, 232 Conn. 231-232 (1995). The text of the contract at issue in Gateway included an agreement by the defendants to assume the plaintiff tenant's obligations under a particular lease. That language clearly created a direct obligation to Gateway, which the Court held was an intended third party beneficiary of a contract between DiNoia and another party.
The plaintiffs in the case before this court have not alleged CT Page 12536 that any provision of the alleged contract between Falls Church Group and East Hill Woods included an agreement by Falls Church Group to undertake a direct obligation to the plaintiffs that would otherwise have been owed to them by East Hill Woods as the owner of the facility. They have made no such allegation with regard to the Ernst Young contract either.
While the plaintiffs have conclusorily alleged that they were "intended beneficiaries," they have not alleged the relevant facts to indicate the status, instead, of a party to whom Falls Church Group and Ernst Young assumed a direct obligation by contract.
The plaintiffs have failed to plead facts that would support the elements of this cause of action, and the motions to strike counts 52-57 filed by the individual CRSA defendants, the Falls Church Group, and Ernst Young are therefore granted.
 Aiding and Abetting Breach of Contract (Counts 113-118)
All defendants have moved to strike counts 113-118, in which the plaintiffs allege that the defendants aided and abetted East Hill Woods in its breach of contractual duties to make accurate disclosures to them concerning the financial status and viability of its continuing care facility. The plaintiffs allege that the defendants "provided substantial assistance in the breach by East Hill Woods, Inc." The plaintiffs have not pleaded that the defendants had and breached any contractual duties to them.
The plaintiffs acknowledge that § 876 of the Restatement (Second) of Torts does not define causes of action for aiding and abetting breach of contract. They have cited no instance in which any Connecticut court has recognized such a cause of action, which attempts to impose liability for breach of contract on a party that has assumed no contractual obligations to the plaintiffs. The plaintiffs' rather perfunctory defense of these counts in its brief suggests that they are merely repeating allegations of negligence stated in other counts: "When a party purporting to possess particular competence in the performance of functions essential to the conduct of a regulated business wrongfully fails to perform those functions so as to aid and assist in the breach of contract by the party that relied upon it for guidance in the performance of its contractual obligations, it is fair and just for the consequences of such breach to fall upon the aider and abettor." (Memorandum in Support of Objection CT Page 12537 to Levy Droney, P.C.'s and Joseph A. Vitale's Motion to Strike, at page 20). While this explanation correctly sets forth the basis for third party liability of the defendants to East Hill Woods, had East Hill Woods itself been sued for breaches caused by negligent performance by those with whom it contracted for services, it does not support a direct cause of action for breach of contract against those with whom the defendants are not alleged to have contracted. The motion to strike Counts 113-118 filed by Ernst Young, Levy Droney and the individual and corporate CRSA defendants are granted.
 Conclusion
The motion to strike of defendants Levy Droney and Joseph A. Vitale are granted as to Counts 15-24 and 114-118 and denied as to Counts 87-95, 97-101, and 104-112.
The motion to strike of defendant Ernst Young is granted as to Counts 15-24, 28-31, 34-35, 38-39, 47-51, 53-57, 87-95, 97-101, 104-112 and 114-118 and denied as to Counts 59-63 and 67-84.
The motion to strike of the CRSA corporate defendant is granted as to Counts 3, 15-24, 87-95, 97-101, 104-112 and 114-118; and denied as to Counts 4-12.
The motion to strike of the CRSA individual defendants is granted as to Counts 3-12, 15-24, 28-45, 47-51, 53-57, 87-95, 97-101, 104-112 and 114-118; and denied as to Counts 59-63, 67-84 and 120-124.
The motion to strike of the Falls Church Group is granted as to Counts 13, 14, 52, 102-103, 113 and 119 and denied as to Counts 1, 2, 85-86 and 96.
For the convenience of the parties, the court attaches, as part of this order, a spreadsheet indicating whether each defendant moved to strike a particular count and the disposition of the motion to strike each count by each defendant.
HODGSON, J.
 Dudrow v. Ernst Young — The Complaint
[EDITORS' NOTE: THE SPREADSHEET IS ELECTRONICALLY NON-TRANSFERRABLE.]